UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| YVONNE BAILEY-LYNCH, | 03-CV-0145E(F) |
|     Plaintiff, | |
|       -vs- | MEMORANDUM |
| JOHN E. POTTER, Postmaster General,<br>  United States Postal Service Agency, | and |
| | ORDER[1] |
|     Defendant. | |

---

Plaintiff Yvonne Bailey-Lynch, proceeding *pro se*, commenced this action on February 21, 2003 asserting claims for alleged discrimination on the basis of race, color, sex, age and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 *et seq.*[2] Defendant John E. Potter, Postmaster General for the United States Postal Service Agency ("USPS"), moved to dismiss the case on July 7, 2004. The undersigned, in an Order dated October 28, 2003, had dismissed plaintiff's disability and hostile work environment claims and had denied dismissal of her retaliation claims and her claims for discrimination based on race, sex and age. Plaintiff, on October 25, 2004, filed a Motion for Summary Judgment ("October 25 Motion"), which the undersigned, in an Order dated December 15, 2004 ("December 15 Order") denied without prejudice because plaintiff had not made a

---

[1] This decision may be cited in whole or in any part.

[2] This Court will analyze plaintiff's ADEA and Title VII claims together because the Second Circuit has held that ADEA claims are to be analyzed under the same framework as Title VII claims. *Schnabel* v. *Abramson*, 232 F.3d 83, 87 (2d Cir. 2000).

substantive legal argument and had not included a statement of undisputed facts pursuant to Rule 56.1(a) of the Local Rules of Civil Procedure ("LRCvP").  Before the Court today are defendant's December 6, 2004 Motion for Summary Judgment and plaintiff's January 14, 2005 Motion for Summary Judgment ("January 14 Motion" or "plaintiff's Motion").  For the reasons set forth below, plaintiff's Motion will be denied, defendant's Motion will be granted and plaintiff's claims will be dismissed.

The facts, in the light most favorable to plaintiff — the non-moving party —, are found as follows and are undisputed excepted where otherwise noted.  Plaintiff was first employed by the USPS in 1999 as a casual employee.  She was called back to work in 2000 but was not asked to return in 2001.  She claims that she was discriminated against when she was terminated from casual employment and received no response to a subsequent application for casual employment.  She also alleges that she was discriminated against when her request not to work on July 1 and 2, 2000 was denied and she allegedly was not properly paid for three weeks of work.  Finally, plaintiff alleges that she was retaliated against for complaining about discrimination.  Defendant asserts that plaintiff cannot establish a *prima facie* case of discrimination or retaliation under Title VII or the ADEA and, in the alternative, that she cannot show that defendant's legitimate non-discriminatory reason for its conduct is a pretext for discrimination.

Plaintiff, an African-American female who was 41-years old at the time at issue, was employed by the USPS on a temporary basis as a casual employee on three occasions: (1) December 11, 1999 through December 31, 1999, (2) June 3, 2000 through November 29,

2000 and (3) December 11, 2000 through December 29, 2000. Casual employees generally are hired for high volume periods — such as Christmas — and high vacation periods — such as the summer. Casual employees are told when they are hired that they must work on weekends and holidays and while the regular work force is on vacation. Casual employees are required to work whenever the USPS needs them to do so and they must be available on all weekends and holidays. When casual employees are hired, they are required to execute a document confirming their understanding that they are required to conform to the work schedule set by the USPS and that they must be available to work any day of the week, including weekends, and in any department of the USPS as designated by the USPS. Plaintiff received explanations and signed documents attesting to the fact that, as a casual employee, she had to make herself available to work whenever and wherever the USPS needed her to do so — to wit, that she was obligated to work on weekends and holidays and that, although she could request a day off, she was not guaranteed that her request would be granted.

Plaintiff requested time off during the week of the Fourth of July 2000, but was denied such as many members of the regular work force were taking vacation during that week. No casual employees were authorized to take time off during the Fourth of July week. Without permission, plaintiff took days off. Plaintiff claims that three female African-American casual employees who were older than plaintiff took time off during the summer. Plaintiff claims that she was treated differently than those three female African-American casual employees because she was not given time off while they were.

Plaintiff next claims that she was not properly paid for eight hours in June, thirteen hours in October and "a couple of hours" in November 2000. She, however, has no documentation indicating such whereas defendant has "clock rings"[3] and history and payroll journals that show that plaintiff was paid for all hours that she was recorded to have worked.

The USPS decided on December 29, 2000 not to contact plaintiff for future casual hiring. Plaintiff's supervisor, Katarina Sullivan, evaluated the performance of all the casual employees — including plaintiff — in her department during the Christmas 2000 season and completed her evaluations before the 29th. Of the thirty-five casual employees considered for future casual employment, twenty-one — including plaintiff — were not recommended for rehire while only ten were so recommended.[4] The race, gender and age of the ten casual employees recommended for rehire are as follows: one black female in her 30's, two black females in their 40's, one white female in her 30's, two white females in their 40's, one black male in his 20's, two white males in their 20's and one white male in his 50's. Two of the ten employees recommended for rehire were of the same status as plaintiff — to wit, black females over the age of 40.

Plaintiff alleges age discrimination because younger people were retained for casual hire while she was not and because she received comments — although she admits that she was

---

[3] Clock rings are a record showing the beginning and ending of the tour of duty, moves to different operations and lunch. They reflect the entries an employee makes at the time clock with their time and attendance badge. When there are no rings, it means that the employee did not make any entries at the time clock for that day. If an employee's time and attendance badge is missing, then the employee must complete a manual card and have it signed by a supervisor. A supervisor then makes computer entries based on the manual record.

[4] As to the remaining four causal employees, the evaluation sheet makes no notation regarding whether they were recommended for hire.

not offended by the comments — from her supervisor and others that she looked younger than her age. Plaintiff alleges discrimination based on her gender because (1) an unnamed employee told her that he had dreamt about her and (2) she had to wear her hair in a ponytail while no other employees — male or female — were required to do so. Plaintiff contacted a counselor at the Equal Employment Opportunity for the USPS ("EEO") on January 2, 2001.

Summary judgment may be granted if the evidence offered shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FRCvP 56(c). There is no genuine issue for trial unless the evidence offered favoring the non-moving party would be sufficient to sustain a jury's verdict for that party. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, when reasonable minds could not differ as to the outcome of an issue, summary judgment is appropriate on that issue. *Id.* at 251-252. The moving party initially bears the burden of showing that no genuine issue of material fact is present but the opposing party must then "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. If the non-moving party fails to establish, after a reasonable opportunity for discovery, the existence of an element essential to that party's claim and on which it will bear the burden of proof at trial, summary judgment is appropriate because such failure to establish an essential element of the case renders all other facts immaterial. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-323 (1986).

When assessing the record in making a summary judgment determination, a court must view all ambiguities and factual inferences in the light most favorable to the non-moving party.

*Adickes* v. *S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  However, the non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." FRCvP 56(e); *Gottlieb* v. *County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

Of course, the summary judgment standard applies with equal force to discrimination cases as it does in other cases.  *See Ashton* v. *Pall Corp.*, 32 F. Supp. 2d 82, 87 (E.D.N.Y. 1999) ("[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation.") (quoting *Meiri* v. *Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).  However, courts must be aware of the fact that evidence of discrimination is rarely overt.  *See Bickerstaff* v. *Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999) ("[E]mployers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law.") (quoting *Ramseur* v. *Chase Manhattan Bank*, 865 F.2d 460, 464-465 (2d Cir. 1989)).  In addition, courts must "also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture."  *Ibid.*  Thus, the issue for the court is "whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances."  *Ibid.*

Plaintiff's January 14 Motion has the same deficiencies that her October 25 Motion had — to wit, (1) plaintiff did not submit a separate, short, concise statement of material facts pursuant to LRCvP 56.1(a) and (2) plaintiff did not make any substantive arguments that, even if uncontested, would entitle her to summary judgment.  Plaintiff claims that she is entitled to

summary judgment because (1) she produced all requested documents while defendant did not,[5] (2) she was terminated from her employment, harassed and retaliated against and (3) she suffered a loss in income of $40,000.  She does not, however, allege any facts to support her arguments and does not explain how or in what manner she was discriminated against or harassed and who was responsible for said actions.  As such, there is no basis for this Court to grant her January 14 Motion and, although plaintiff is proceeding *pro se*, she was given an opportunity by the undersigned in the December 15 Order to correct the deficiencies of her October 25 Motion but has failed to do so.  Therefore, plaintiff's Motion will be denied.

The Court will now address defendant's Motion.  Plaintiff alleges that she was discriminated against on the basis of her race, age and gender when (1) her request not to work on July 1 and 2, 2000 was denied, (2) she was allegedly improperly paid for time worked in June, October and November 2000 and (3) she was not reappointed to her casual position. In a Title VII claim, plaintiff bears the initial burden of making out a *prima facie* case of discrimination.  *St. Mary's Honor Ctr.* v. *Hicks*, 509 U.S. 502, 506 (1993); *Texas Dep't of Cmty. Affairs* v. *Burdine*, 450 U.S. 248, 252-253 (1981).  If the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the alleged employment action.  *Burdine*, at 253 (quoting *McDonnell Douglas* v. *Green*, 411 U.S. 792, 802 (1973)).  Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the

---

[5]Defendant asserts that all requested documents were produced and that such is documented in the case file.  The Court, however, need not address this issue because it is not a valid ground for summary judgment.

evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 253 (quoting *McDonnell Douglas*, at 804).

To make out a *prima facie* case of discrimination under Title VII, plaintiff must allege that (1) she is a member of a protected class, (2) she was performing her job satisfactorily, (3) she was subjected to an adverse employment action and (4) either the adverse employment action occurred under circumstances giving rise to an inference of discrimination or similarly situated employees outside her protected class were treated differently. *McDonnell Douglas*, at 802; *Graham* v. *Long Island Rail Road*, 230 F.3d 34, 38 (2d Cir. 2000); *Reimer* v. *Heritage Asset Mgmt.*, 1999 U.S. Dist. LEXIS 9295, at *11 n.3 (W.D.N.Y. June 15, 1999). Assuming *arguendo* that the three incidents that plaintiff alleges amount to adverse employment actions, plaintiff still cannot meet her *prima facie* burden because the incidents did not occur under circumstances giving rise to an inference of discrimination and she cannot identify similarly situated employees who were treated differently. Furthermore, she does not assert that defendant's legitimate reason for the allegedly adverse employment actions were not its true reasons. As such, her discrimination claims will be dismissed.

First, plaintiff alleges that the denial of her request to take time off during the week of July Fourth was discriminatory. She does not, however, allege that defendant's proffered reason — *viz.*, that casuals are hired to supplement the regular work force, that they are informed that they must work to cover holidays and the vacations of the regular work force and that the week of July Fourth is a week when many of the regular work force take vacation — is a pretext for discrimination. In fact, plaintiff does not deny knowing that, as a causal

employee, (1) she was required to make herself available to work whenever the USPS needed her to work, (2) she was not guaranteed that her requested days off would be granted and (3) she was obligated to work on weekends and holidays. Plaintiff's supervisor told plaintiff that the Fourth of July week is a very busy time and that plaintiff would not be able to take July 1 and 2 off. Furthermore, plaintiff is unable to identify any casual employees who were granted time off during that week. Plaintiff's claim, therefore, that the denial of her request to take July 1 and 2, 2000 off was discriminatory will be dismissed.

Plaintiff next argues that she was not properly paid for time allegedly worked in June, October and November 2000. She does not, however, submit any evidence to support this claim or identify the exact dates and hours for which she claims that she was not adequately paid. Defendant, on the other hand, has reviewed plaintiff's time records and determined that she was properly paid. *See, e.g., Dister* v. *Continental Group, Inc.*, 859 F.2d 1108, 1115 (2d Cir. 1988) (holding that "the evidence must--at a minimum--create a genuine issue of fact as to [defendant's] offered reasons or as to a discriminatory motive") (citations omitted); *Batista* v. *Union of Needleworkers, Indus. & Textile Employees AFL-CIO*, 2000 U.S. Dist. LEXIS 17294, at *10 (S.D.N.Y. Nov. 30, 2000) (dismissing the plaintiff's disparate pay and disparate employment conditions claims because she "submit[ted] no evidence disputing" the defendant's assertions). Plaintiff's failure to contest defendant's evidence and assertion and failure to provide evidence of any sort warrants dismissal of her allegation regarding inadequate pay.

Plaintiff further contends that she was discriminated against on the basis of her age, race and sex when she was told that she would not be rehired as a casual employee, but does not allege any facts supporting her claim. Instead, the facts regarding the age, race and sex of those individuals retained for casual employment negates any inference of discrimination. First, of the 35 casual employees — including plaintiff — whose performance was reviewed in December 2000, ten were recommended for rehire, five of whom were in plaintiff's age group, six of whom were female and four of whom were black. In fact, two of the ten employees were of the same status as plaintiff — *viz.*, black females over the age of 40. Clearly, no inference of discrimination has been raised. *See, e.g., Balut* v. *Loral Elec. Sys.*, 988 F. Supp. 339, 349 (S.D.N.Y. 1997), *aff'd*, 166 F.3d 1199 (2d Cir. 1998) (finding a lack of discriminatory inference where the plaintiff's replacement belonged to the same protected class); *Ralkin* v. *New York City Transit Auth.*, 62 F. Supp. 2d 989, 1000 (E.D.N.Y. 1999) (holding that the defendant's continued employment of individuals who are roughly in the plaintiff's same category and protected class undercuts any inference that the plaintiff's termination was discriminatory).

Plaintiff also alleges that she faced discrimination on the basis of her sex when an unknown male employee told her that he had dreamt about her. Such a single, isolated statement made by an unidentified employee without decision-making authority is not evidence of discrimination. *Argueta* v. *North Shore Long Island Jewish Health Sys., Inc.*, 2003 U.S. Dist. LEXIS 20456, at *24-25 (E.D.N.Y. Nov. 6, 2003). Plaintiff, moreover, claims that she was treated differently on the basis of her sex when she was told that she could not wear her hair in braids without a ponytail. She does not, however, explain how she was treated differently

from similarly situated employees outside her protected class and admits that she was treated differently than those in her protected class, implying that her class was not the reason for the alleged behavior.  As such, she has not met her *prima facie* burden.

Next, plaintiff claims that she was discriminated against on the basis of her age when she was told that she looks younger than her age.  Plaintiff, however, admits that she was not offended by the comment and cannot claim that the comment was an adverse employment action.  *See Galabya* v. *New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (holding that, to constitute an adverse employment action within the context of a Title VII claim, a plaintiff must demonstrate that an employment action was one that resulted in a "materially adverse change in the terms and conditions of her employment[,]" which "must be more disruptive than a mere inconvenience or an alteration of job responsibilities") (quotations and citation omitted); *Murphy* v. *Bd. of Educ. of the Rochester City Sch. Dist.*, 273 F. Supp. 2d 292, 304 (W.D.N.Y. 2003) ("To be adverse, an employment action must involve the deprivation of some tangible job benefits such as compensation, terms, conditions or privileges of employment.") (citations and quotations omitted).  Requiring plaintiff to wear her hair in a ponytail did not affect her employment in any way.  Therefore, plaintiff's claims will be dismissed.

Finally, plaintiff alleges that she was retaliated against for complaining about discrimination.  Title VII makes it unlawful for an employer to retaliate against an employee because she has opposed discrimination in the workplace.  To establish a *prima facie* case of retaliation, plaintiff must show "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging [her]; and (3) a causal connection between the

protected activity and the adverse employment action." *Terry* v. *Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (quotations and citation omitted). "This causal connection may be shown (i) indirectly by showing that the adverse employment action followed closely in time *after* the protected activity, (ii) through other indirect evidence such as similar treatment of other employees who engaged in similar activity, or (iii) directly through evidence of retaliatory animus directed at the plaintiff." *Monahan* v. *United Techs. Corp., Pratt & Whitney Div.*, 1997 U.S. App. LEXIS 12278, at *5 (2d Cir. 1997) (citation omitted and emphasis added). Defendant does not contest that failing to reappoint plaintiff as a casual employee at the USPS constitutes an adverse employment action. Defendant, instead, claims that plaintiff cannot establish a causal connection between her protected activity and the failure to reappoint her. Plaintiff engaged in protected activity on January 2, 2001 when she requested an appointment with an EEO counselor. The adverse employment action — to wit, the decision not to appoint plaintiff to another casual employment position — occurred in December 2000.[6] This timeline indicates that the decision not to rehire plaintiff was not in retaliation for her engaging in protected activity. *See, e.g., Bennett, Jr.* v. *Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 250 (S.D.N.Y. 2001) (holding that the fact that the adverse employment action preceded the protected activity negates a finding of retaliation because there can be no retaliation for "an act not yet taken"). Because the decision not to rehire plaintiff was made before she contacted the

---

[6]Plaintiff last worked for the USPS from December 11 to December 29, 2000. Her Notification of Personnel Action form, which was completed while she was still employed by the USPS, indicated (1) that plaintiff's last day in pay status was December 29, 2000, (2) that December 29, 2000 marked the end of her appointment and (3) that her supervisor had indicated that she had unacceptable work performance and that she would not be contacted for future casual hiring.

EEO counselor, no causal connection can be made and plaintiff's retaliation claim will be dismissed.  *See also Lovejoy-Wilson* v. *NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001) (holding that causality will be inferred if "the protected activity was closely *followed* in time by the adverse action") (emphasis added).

Accordingly, it is hereby **ORDERED** that plaintiff's Motion for Summary Judgment is denied, that defendant's Motion for Summary Judgment is granted, that all of plaintiff's claims are dismissed and that the Clerk of this Court shall close this action.

DATED:	Buffalo, N.Y.

	May 20, 2005

										*/s/ John T. Elfvin*
										JOHN T. ELFVIN
										S.U.S.D.J.